# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

MOSTAFA SEIFAN,                                  :
                                                 :
      Plaintiff,                         :          Civil Action No.:     25-261 (RC)
                                                 :
v.                                               :          Re Document No.:      5
                                                 :
MELISSA SWEENEY, Acting Deputy Chief             :
of Mission for the U.S. Embassy                  :
in New Zealand, *et al*.,                        :
                                                 :
      Defendants.                        :

## MEMORANDUM OPINION

### GRANTING DEFENDANTS' MOTION TO DISMISS

## I. INTRODUCTION

Mostafa Seifan ("Plaintiff") brought this action seeking to compel James Kania, Acting Consul General for the United States Consulate in Aukland, New Zealand; Melissa Sweeney, Acting Deputy Chief of Mission for the United States Embassy in New Zealand; and Secretary of State Marco Rubio[1] ("Defendants") to adjudicate his visa application. Defendants have moved to dismiss the complaint. For the reasons discussed below, the Court grants the motion to dismiss.

## II. FACTUAL BACKGROUND

The Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.*, establishes that certain noncitizens, including those who have "advanced degrees or their equivalent or who because of their exceptional ability in the sciences, arts, or business, will substantially benefit

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), original defendants who have "cease[d] to hold office while [this] action [was] pending" were automatically substituted for their predecessors. Fed. R. Civ. P. 25(d).

prospectively the national economy, cultural or educational interests, or welfare of the United States" may apply for visas to enter the United States. 8 U.S.C. § 1153(b)(2)(A); *see* 8 C.F.R. § 204.5(h); *Sharifymoghaddam v. Blinken*, No. 23-cv-1472, 2024 WL 939991, at *1 (D.D.C. Mar. 5, 2024). Visa applicants "mak[e]" their applications by bringing the required paperwork to an in-person interview with a consular officer. 9 Foreign Affairs Manual ("FAM") § 504.1-3(a).[2] Following the interview, federal regulations generally require the consular officer to issue or refuse the visa.[3] 22 C.F.R. § 42.81(a); *see Karimova v. Abate*, No. 23-cv-5178, 2024 WL 3517852, at *1 (D.C. Cir. July 24, 2024) (per curiam).

INA § 221(g), 8 U.S.C. § 1201(g) requires an officer to deny a visa application if the officer "knows or has reason to believe" the noncitizen is "ineligible to receive a visa" under "any [] provision of law" based on "statements in the application, or in the papers submitted therewith." 22 C.F.R. § 41.121(a), (b) (outlining the grounds for visa refusals and refusal procedure). In some cases, an officer will reject a visa application under INA § 221(g) but then immediately place the application in administrative processing, which allows the applicant to submit additional information. *E.g.*, *Janay v. Blinken*, 743 F. Supp. 3d 96, 102–03 (D.D.C. 2024). That happened here.

On December 30, 2021, Mr. Seifan, an Iranian citizen, petitioned for an EB-2 visa. Pet. Writ of Mandamus and Compl. for Inj. Relief ("Compl.") ¶ 20, ECF No. 1. EB-2 visas permit noncitizens with "advanced degrees" or "exceptional abilities" that serve the national interest to enter the United States to work. 8 U.S.C. § 1153(b)(2)(A). United States Citizenship and

---

[2] The Foreign Affairs Manual articulates the State Department's "official guidance, including procedures and policies, on matters relating to Department management and personnel[.]" 22 C.F.R. § 5.5; *see* 18 FAM § 201.1-1(B).

[3] Consular officers may also "discontinue granting the visa" under certain circumstances inapplicable here. *See* 8 U.S.C. § 1253(d); 22 C.F.R. § 42.81(a).

Immigration Services ("USCIS") approved Mr. Seifan's petition on March 17, 2022. Compl. ¶ 21. On June 22, 2022, the National Visa Center notified Mr. Seifan that it had received his approved immigrant visa petition from USCIS. *Id.* ¶ 22. On May 17, 2023, Plaintiff interviewed with the U.S. Consulate in Auckland, New Zealand. *Id.* ¶ 24. Following the interview, the consular official refused Mr. Seifan's application under INA § 221(g), 8 U.S.C. § 1201(g) and then placed it into administrative processing. *Id*. ¶¶ 25–26. On May 20, 2023, Plaintiff provided the U.S. Consulate General in Auckland, New Zealand with additional documents. *Id.* ¶ 26. Between September 2023 and January 2025, Plaintiff and Defendants engaged in a series of e-mails about the status of Plaintiff's visa application and its ongoing administrative processing. *Id.* ¶¶ 32–41. On May 25, 2023, the Auckland Consulate sent Mr. Seifan an unsigned email stating that his application "requires additional administrative processing before we can adjudicate the visa." Ex. C to Compl. at 4, ECF No. 1-5. On January 24, 2025, Plaintiff sent a follow-up email to the U.S. Consulate General in Auckland but "[the consulate] did not reply." Compl. ¶ 41.

On January 29, 2025, Plaintiff filed this lawsuit to "compel action" on his visa application. *Id.* ¶ 1. His three-count complaint alleges: 1) that the government's delay in processing his visa application violates the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(1); (2) that he is entitled to relief under the Mandamus Act, 28 U.S.C. § 1361; and (3) that he is entitled to attorney's fees under the Equal Access to Justice Act, 5 U.S.C. § 504 as well as 28 U.S.C. § 2412. *Id.* ¶¶ 45–77. Mr. Seifan filed his complaint after his visa application had been in administrative processing for twenty months. *Id.* ¶¶ 1, 20. He claims that Defendants' "failure to adjudicate [his]…visa application[] has had a profound and negative impact on [his] life.]." *Id.* ¶ 43.

The government has moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(1) and (b)(6). *See generally* Mot. Dismiss, ECF No. 5. Plaintiff filed an opposition and the government filed a reply. Pl.'s Opp'n to Defs.'s Mot. Dismiss ("Pl.'s Opp'n"), ECF No. 6; Reply in Further Supp. of Defs.' Mot. Dismiss ("Defs.' Reply"), ECF No. 7. The motion to dismiss is thus ripe for review.

### III.  LEGAL STANDARD

#### A.  Rule 12(b)(1)

Under Federal Rule of Civil Procedure 12(b)(1), a party may move to dismiss an action or claim when the court lacks subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). A motion for dismissal under Rule 12(b)(1) "presents a threshold challenge to the court's jurisdiction." *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987). On a Rule 12(b)(1) motion, the plaintiff "bears the burden of establishing jurisdiction by a preponderance of the evidence." *Bagherian v. Pompeo*, 442 F. Supp. 3d 87, 91 (D.D.C. 2020); *see Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

#### B.  Rule 12(b)(6)

The Federal Rules of Civil Procedure require a plaintiff to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) does not test a plaintiff's ultimate likelihood of success on the merits. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *abrogated on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800 (1982). Instead, a court considering a Rule 12(b)(6) motion presumes that the complaint's factual allegations are true and construes them in the light most favorable to the plaintiff. *See, e.g.*, *United States v. Philip Morris, Inc.*, 116 F. Supp. 2d 131, 135 (D.D.C. 2000). Nevertheless, "[to] survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true,

to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## IV. ANALYSIS

Defendants make two arguments in their motion to dismiss. One, that Plaintiff's claims fail because he cannot identify a clear, non-discretionary duty requiring a consular officer to take action on his visa application now that it has been refused under INA § 221(g). Mot. Dismiss at 4–8. Two, that judicial review of his claims is barred by the consular non-reviewability doctrine. *Id.* at 8–11. In making these arguments, Defendants rely heavily on the D.C. Circuit's recent unpublished decision in *Karimova v. Abate*, 2024 WL 3517852.

Like Mr. Seifan, the *Karimova* plaintiff's visa application was refused by a consular official under INA § 221(g) and then placed in administrative processing. *Id.* at *2. Around one year later, Ms. Karimova filed a lawsuit claiming that the delay was unlawful under the APA and the Mandamus Act. *Id.* Ms. Karimova argued that the consular official was "required to either issue her a visa or refuse her application, without then also placing it in administrative processing." *Id.* at *3. The panel disagreed. It held that refusal of a visa under INA § 221(g) constitutes a final decision, even if the government immediately after puts the application into administrative processing. *Id.* at *1, *4; *see also* 22 C.F.R. § 42.81(a) ("When a visa application has been properly completed and executed before a consular officer . . . the consular officer must issue the visa, refuse the visa under INA 212(a) or 221(g) or other applicable law or, pursuant to an outstanding order under INA 243(d), discontinue granting the visa."); 9 FAM § 504.1-3(g) ("Once an application has been executed, [the consular officer] must either issue the visa or refuse it.").

To state a claim for unlawful agency delay under the APA, a plaintiff must show that the defendant failed to perform a "legally required, discrete act." *Montanans for Multiple Use v. Barbouletos*, 568 F.3d 225, 227 (D.C. Cir. 2009). To obtain a writ of mandamus, a plaintiff must similarly establish that the government is violating "a crystal-clear legal duty." *In re Ctr. for Biological Diversity*, 53 F.4th 665, 670 (D.C. Cir. 2022) (quoting *In re Nat'l Nurses United*, 47 F.4th 746, 752 (D.C. Cir. 2022)). Because the *Karimova* applicant had received a final decision on her visa application—denial pursuant to INA § 221(g)—the panel concluded that there was no ongoing delay and no mandatory action for a court to compel. *See Karimova*, 2024 WL 3517852.

The facts in *Karimova* are materially indistinguishable from the facts here, so the D.C. Circuit's holding would appear to be outcome determinative for Mr. Seifan's claims. But courts in this district are split on whether unpublished circuit decisions like *Karimova* are binding. *Compare, e.g., Deylami v. Kvien*, No. 23-cv-1393, 2025 WL 219064, at *5 (D.D.C. Jan. 16, 2025) (holding that *Karimova* is binding precedent), *and Ibrahim v. Spera*, No. 23-cv-3563, 2024 WL 4103702, at *3 (D.D.C. Sept. 6, 2024) (same), *and Mojaver v. Garland*, No. 24-cv-0253, 2024 WL 4715419, at *2–3 (D.D.C. Nov. 7, 2024) (same), *and Amjad v. Schofer*, No. 24-cv-1773, 2024 WL 4416984, at *1 (D.D.C. Oct. 4, 2024) (same); *with, e.g., Hajizadeh v. Blinken*, No. 23-cv-1766, 2024 WL 3638336, at *3 n.3 (D.D.C. Aug. 2, 2024) (holding that *Karimova* is not binding precedent); *Haeri Mehneh v. Blinken*, No. 24-cv-1374, 2024 WL 5116521, at *5 (D.D.C. Dec. 16, 2024) (same), *and Aramnahad v. Rubio*, No. 24-cv-1817, 2025 WL 973483, at *7 (D.D.C. Mar. 31, 2025) (same), *and Mahmoodi v. Altman-Winans*, No. 24-cv-2010, 2025 WL 763754, at *6 (D.D.C. Mar. 11, 2025) (same); *and Akter v. Flook,* No. 24-cv-146, 2025 WL 661296, at *2 n.1 (D.D.C. Feb. 28, 2025) (same). The split stems from two circuit rules that

facially conflict.  D.C. Circuit Rule 32.1(b)(1)(B) provides that unpublished circuit decisions "may be cited as precedent."  D.C. Circuit Rule 36(e)(2) states, however, that "a panel's decision to issue an unpublished disposition means that the panel sees no precedential value in that disposition."  The Court need not resolve whether to treat *Karimova* as precedent here because, as discussed below, there are independent reasons to grant the motion to dismiss.

### A.  Consular Nonreviewability Doctrine

The Court starts by addressing Defendants' position that the doctrine of consular nonreviewability bars Plaintiff's claims.  *See* Mot. Dismiss at 8–11.  As its name suggests, the consular nonreviewability doctrine generally "shields a consular official's decision to issue or withhold a visa from judicial review."[4]  *Baan Rao Thai Rest. v. Pompeo*, 985 F.3d 1020, 1024 (D.C. Cir. 2021); *see also Saavedra Bruno v. Albright*, 197 F.3d 1153, 1160 (D.C. Cir. 1999) ("[C]onsular visa determinations are not subject to judicial review."); *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 543 (1950) (explaining that courts cannot "review the determination of the political branch of the Government to exclude a given alien").  Before *Karimova*, courts in this district had often held that the nonreviewability doctrine does not apply when a consular officer initially refuses a visa application under INA § 221(g) and then places the application in administrative processing.  *See Hamdan v. Oudkirk*, No. 24-cv-1001, 2024 WL 4553983, at *4–5 (D.D.C. Oct. 23, 2024) (describing exceptions to the consular nonreviewability doctrine before *Karimova* was decided).  Those courts had reasoned that "the consular nonreviewability doctrine applies only to *final* decisions" and therefore "does not bar judicial review of a consular officer's delay when a visa application has been provisionally refused

---

[4] There are two exceptions to the doctrine, neither of which applies here.  *See Colindres v. Dep't of State*, 71 F.4th 1018, 1021 (D.C. Cir. 2023) (describing the exceptions).

pending a final decision." *See Al-Gharawy v. Dep't of Homeland Sec.*, 617 F. Supp. 3d 1, 11 (D.D.C. 2022) (emphasis added) (collecting cases); *but see Yaghoubnezhad v. Stufft*, 734 F. Supp. 3d 87, 104 (D.D.C. 2024) (holding that plaintiffs' visa delay claims were barred by consular nonreviewability doctrine).

*Karimova* casts doubt on that reasoning. The Circuit held that once a consular official refuses a visa application under INA § 221(g), the visa has been finally refused, even if the application is then placed in administrative processing. *Karimova*, 2024 WL 3517852, at *2. The panel explained that a "visa application remains officially refused" "[u]nless and until" a consular officer decides to "re-open and re-adjudicate the applicant's case"—which may never happen. *Id.*

The Court need not determine the extent to which *Karimova* requires it to apply the consular nonreviewability doctrine here. Because the doctrine is "not jurisdictional," *Dep't of State v. Muñoz*, 602 U.S. 899, 908 n.4 (2024), the Court will "assume without deciding" that Mr. Seifan's "claims are reviewable [] notwithstanding consular nonreviewability." *See Trump v. Hawaii*, 585 U.S. 667, 682–83 (2018).

## B. Clear and Non-Discretionary Duty

Next, the Court addresses Defendants' position that Plaintiff has failed to state a claim because he has not identified a "clear, non-discretionary duty requiring a consular officer to take any action on the visa application now that it has been refused under INA Section 221(g), 8 U.S.C. § 1201(g)." *See* Mot. Dismiss at 4–8. To articulate a claim of "unreasonable delay . . . [Plaintiff] must allege that an agency has a clear non-discretionary duty to take a specific action and that the agency failed to take that action." *Arabzada v. Donis*, 725 F. Supp 3d 1, 11 (D.D.C. 2024); *see also Babamuradova v. Blinken*, 633 F. Supp. 3d 1, 19 (D.D.C. 2022) ("What plaintiffs

must show to establish a mandamus claim is similar to what they must show . . . under the APA, as in both instances, plaintiffs must establish that the government has a clear, nondiscretionary duty.").  Plaintiff points to three sources of such a non-discretionary duty: 8 U.S.C. § 1202(b), 22 C.F.R. § 42.81(a), and 22 C.F.R. § 41.106.[5]  Pl.'s Opp'n at 15–16.  The Court considers each provision in turn.

### 1.  8 U.S.C. § 1202(b)

Plaintiff's reliance on 8 U.S.C. § 1202(b) fails.  *See* Pl.'s Opp'n at 20–21.  That statute provides that all immigrant visa applications shall be reviewed and adjudicated by a consular officer.  The Court agrees with Defendants that § 1202(b) imposes no clear, non-discretionary duty applicable here.  Defs.' Reply at 5–6.  The portion of the statute relied upon by Plaintiff is § 1202(b)'s final sentence, which "concludes" a long paragraph that "describes the documentation that visa applicants must provide, [and] to whom they must provide it." *Babamuradova,* 633 F. Supp. 3d at 14–15.  "Read in context, this sentence cabins the State Department's discretion as to *who* may review and adjudicate [non]immigrant visa application; it does not mandate that all applications actually be adjudicated." *Id.* at 15; *see also Saeedifar v. Blinken,* No. 22-cv-2266, 2022 WL 4545231, at 3* (D.D.C. Sept. 29, 2022) ("§ 1202(b) appears instead 'to require that all visa applications that are reviewed . . . be reviewed by a consular officer rather than some other person.'") (quoting *Zarei v. Blinken,* No. 21-cv-2101, 2021 WL 9146060, at *1 (D.D.C. Sept. 30, 2021)); *Khamrabaeva v. Blinken*, No. 22-cv-1219, 2022 WL 4446387, at *6 (D.D.C. Sept. 24, 2022) ("The Court is persuaded that, read in context, the last sentence of § 1202(b) more likely dictates who reviews visa applications without creating a

---

[5] Plaintiff concedes that the APA does not independently give rise to a non-discretionary duty.  Pl.'s Opp'n at 20 ("Plaintiff Seifan recognizes that the APA alone does not require Defendants to act.").

nondiscretionary duty to adjudicate any particular application within a given timeframe.").  The interpretive canon that Congress does not "hide elephants in mouseholes," *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001), reinforces this conclusion.

Even assuming 8 U.S.C. § 1202(b) imposes a duty, the government has done all that is required.  *Karimova*, while not necessarily precedential, persuasively explains that refusal of a visa is a final agency decision.  *Karimova*, 2024 WL 3517852, at *2–3 (holding "[u]nless and until [a consular officer re-opens and re-adjudicated an applicant's case], the visa application remains officially refused" (internal quotations removed)); *id.* at *6 ("[Plaintiff] sued in district court to obtain the exceptional and rare relief of an order compelling the consular officer overseeing her visa application to make yet another 'final decision' on her already-refused visa application.  Because [Plaintiff] has not identified an adequate legal basis for that duty, the district court properly dismissed her claim.").  The Court therefore concludes that 8 U.S.C. § 1202(b) cannot support Plaintiff's delay claims.

### 2.  22 C.F.R. § 42.81(a)

22 C.F.R. § 42.81(a) provides that once a visa application has been executed, the consular official must generally either issue the visa or refuse it.  In *Karimova*, the D.C. Circuit held that once a noncitizen's visa is refused, he has "received the 'refused' decision that the law [(*i.e.*, 22 C.F.R. § 42.81)] expressly authorizes as one of the allowed actions on a visa application." *Karimova*, 2024 WL 3517852, at *4 (citing 22 C.F.R § 42.81).  The Court agrees with the *Karimova* panel that 22 C.F.R. § 42.81(a) does not establish any additional action for the government to take after an application is refused.  As the plain language of the statute makes clear, the duty to take action only occurs once—"[w]hen a visa application has been properly completed and executed."  22 C.F.R. § 42.81(a); *see Asgrow Seed Co. v. Winterboer*, 513 U.S.

179, 187 (1995) (holding that "when terms used in a statute are undefined, we give them their ordinary meaning"). Plaintiff cannot reasonably dispute that his visa application has not "been properly completed and executed." *See Karimova*, 2024 WL 3517852, at *4 ([Plaintiff] received the 'refused' decision that the law expressly authorizes as one of the allowed actions on a visa application.") (citing 22 C.F.R § 42.81; 8 U.S.C. § 1201(g)). Put another way, nothing in 22 C.F.R. § 42.81(a) prevents a consular officer from refusing a visa application and then evaluating it further via administrative processing.

### 3. 22 C.F.R. § 41.106

22 C.F.R. § 41.106 requires officers to process a nonimmigrant's visa application "properly and promptly." But because Plaintiff seeks an immigrant visa, not a nonimmigrant visa, 22 C.F.R. § 41.106 does not apply.[6] It therefore cannot be the basis for a clear, non-discretionary duty.

\* \* \*

The Court concludes that none of 8 U.S.C. § 1202(b), 22 C.F.R. § 42.81(a), and 22 C.F.R. § 41.106 creates a crystal-clear obligation for Defendants to re-adjudicate Mr. Seifan's visa application. To the extent Plaintiff argues that Defendants' actions have created a clear, non-discretionary duty, the Court rejects that argument. True, Defendants have expressly represented that Mr. Seifan's application will receive further adjudication. *See* Ex. C to Compl. at 4 (email from the Auckland consulate stating that Mr. Seifan's application "requires additional administrative processing before we can adjudicate the visa"). Mr. Seifan argues that "[u]nder

---

[6] Immigrant visas are issued to foreign nationals who intend to live permanently in the United States; nonimmigrant visas are issued to those who intend to visit temporarily. *Requirements for Immigrant and Nonimmigrant Visas,* U.S. Customs and Border Protection, (Mar. 14, 2024), available at https://perma.cc/WYZ2-EYC9.

[this] assumption, [] the visa application at issue has not been definitively adjudicated," and, as a result, "it cannot stand that Defendant's non-discretionary duty is complete." Pl.'s Opp'n at 18. But Plaintiff has not articulated how informal, unsigned communication from the consulate creates a clear, non-discretionary duty. Ex. C to Compl. at 4. He has not pointed to any case finding a clear, non-discretionary duty based on a defendant's words or actions instead of a statute, regulation, or internal agency rule. *Contra*, *e.g.*, *Karimova*, 2024 WL 3517852 at *34 (analyzing 5 U.S.C. § 555(b), 22 C.F.R. § 42.81, and 8 U.S.C. § 1201(g) as potential sources of a clear, non-discretionary duty) *and Yaghoubnezhad*, 734 F. Supp. 3d at 99–101 (analyzing 8 U.S.C. § 1201(g), 22 C.F.R. § 41.121(b), and 22 C.F.R. § 41.121(c) as potential sources of a clear, non-discretionary duty), *and Babamuradova*, 633 F. Supp. 3d at 19 (analyzing 8 U.S.C. § 1202(b) and the FAM as potential sources of a clear, non-discretionary duty). As discussed, Defendants have already refused Plaintiff's visa application. That is a "final result." *Ibrahum*, 2024 WL 4103702, at *3 ("[T]he Circuit states quite plainly that the consul's refusing to grant an application and placing it in administrative processing is a final refusal."). Unless re-adjudication occurs, Mr. Seifan's application will remain officially refused. *See Karimova*, 2024 WL 3517852 at *2, *4.

Because Plaintiff has not identified a clear and non-discretionary duty, his claims for relief under the APA (Count I) and the Mandamus Act (Count II) must be dismissed for failure to state a claim upon which relief can be granted. Other courts have described disapprovingly the incongruities that arise from the government's power to refuse a visa application—shutting off judicial review—and then put that application in administrative processing for eventual reconsideration. *E.g.*, *Datta v. Rubio*, No. 24-cv-2937, 2025 WL 752643, at *8 (D.D.C. Mar. 10, 2025) ("*Karimova's* holdings incentivize agencies charged with the adjudication of visa

applications to simply 'refuse applications out of hand and then begin the true deliberation process thereafter,' leaving 'no possibility for judicial oversight of untimely decision making.'") (quoting *Haeri Mehneh*, 2024 WL 5116521, at *5); *Ibrahim*, 2024 WL 4103702, at *3 & n.2 (similar).  But that is not a problem the Court is empowered to solve.  *See Datta*, 2025 WL 752643, at *9 ("[T]he statutory gap that, in theory, allows agencies to issue pro forma refusals while continuing to administratively process visa applications is best filled by Congress, not this Court.").

### C.  Attorneys' Fees

Finally, because neither of Plaintiffs' substantive claims state a claim for which relief can be granted, his derivative claim for attorney's fees in Count III must also be dismissed.  Though the government's motion to dismiss does not specifically address Plaintiff's entitlement to or request for attorney's fees under the Equal Access to Justice Act ("EAJA"), *see generally* Mot. Dismiss, the Court will dismiss this claim *sua sponte*.  *See Best v. Kelly*, 39 F.3d 328, 331 (D.C. Cir. 1994) (holding that a court may dismiss a claim *sua sponte* under Rule 12(b)(6) "whenever the plaintiff cannot possibly win relief") (internal quotation omitted).  Plaintiff's attorney's fee claim fails because under the EAJA, the entitlement to fees is triggered by a plaintiff becoming a prevailing party.  *See* 28 U.S.C. § 2412(d)(1)(A); *see also Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 965–66 (D.C. Cir. 2004) (discussing what renders a plaintiff a prevailing party).  Because Plaintiff's substantive claims fail, he is not a prevailing party.  The Court will therefore dismiss the complaint under Rule 12(b)(6).

## V.  CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is **GRANTED**.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  July 31, 2025                                                    RUDOLPH CONTRERAS

                                                                                    United States District Judge